992 So.2d 900 (2008)
STATE of Florida, Appellant,
v.
Damion J. SHEAROD, Appellee.
No. 2D06-717.
District Court of Appeal of Florida, Second District.
October 24, 2008.
*902 Bill McCollum, Attorney General, Tallahassee, and Deborah Fraim Hogge and Diana K. Bock, Assistant Attorneys General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Assistant Public Defender, Bartow, for Appellee.
*903 CASANUEVA, Judge.
On January 7, 2005, Giannis Avrampopulos was found dead of multiple gunshots on the side of a road in Lee County. The victim was last seen alive by his girlfriend the prior evening, allegedly in the company of appellee Damion J. Shearod and two other men. Mr. Shearod maintained that he was not with the victim that evening at any time, but the State of Florida prosecuted him for second-degree murder because an eyewitness, Maurice Joyner, placed him at the scene of the shooting wielding the gun. The jury found him guilty as charged but as a principal, because the jury also found that he did not possess the firearm. He moved for a judgment of acquittal or a new trial, and the trial court granted his motion for judgment of acquittal, which the State now appeals as permitted by Florida Rule of Appellate Procedure 9.140(c)(1)(E). While we share a number of the evidentiary concerns discussed by the able trial judge, we conclude that because the State managedbut just barelyto establish a prima facie case, we must reverse for a new trial.
A trial court must grant a motion for judgment of acquittal in those instances where "the evidence is insufficient to warrant a conviction." Fla. R.Crim. P. 3.380. When faced with a motion for judgment of acquittal, the trial court must measure the legal adequacy of the evidence before presenting the case to the jury for deliberation. "Sufficient evidence is `such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded.'" Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981). On appellate review of the granting or denial of a motion for judgment of acquittal, the de novo standard of review applies. Pagan v. State, 830 So.2d 792, 803 (Fla.2002).
Our supreme court has established clear rules that our courts must apply in evaluating the sufficiency of the evidence on a motion for judgment of acquittal. Unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law," the trial court should not grant the motion. Williams v. State, 967 So.2d 735, 755 (Fla.2007) (quoting Gudinas v. State, 693 So.2d 953, 962 (Fla.1997)). The existence of contradictory, conflicting testimony or evidence "does not warrant a judgment of acquittal because the weight of the evidence and the witnesses' credibility are questions solely for the jury." Fitzpatrick v. State, 900 So.2d 495, 508 (Fla.2005). "Where there is room for a difference of opinion between reasonable men as to the proof of facts from which the ultimate fact is sought to be established," the force of such conflicting testimony should not be determined on a motion for judgment of acquittal. Darling v. State, 808 So.2d 145, 155 (Fla.2002).
In its order granting Mr. Shearod's motion for judgment of acquittal after jury verdict, the trial court did an extensive review of the evidence adduced at trial. A careful reading of this order persuades us that the trial court was passing upon the weight and not the sufficiency of the evidence. See Ferebee v. State, 967 So.2d 1071, 1072 (Fla. 2d DCA 2007) (reversing a denial of a motion for new trial because of the trial court's error in using the sufficiency of the evidence standard rather than the weight of the evidence standard). For example, the State called a jailhouse witness to the stand who testified that while in a holding cell, he heard Mr. Shearod say that he had "killed the cracker," referring to the white victim. The State later distanced itself from this testimony in closing argument as it became highly likely that it was false. However, *904 in arguing against the motion for judgment of acquittal at the close of all the evidence, the State correctly maintained that it was within the jury's province to pass upon this witness's credibility. Nonetheless, we are compelled to note that without this testimonyand without other testimony that we discuss below the State would likely fail to establish a prima facie case sufficient to withstand a motion for judgment of acquittal. Cf. Walker v. State, 273 So.2d 137, 138 (Fla. 2d DCA 1973) (holding that the testimony of the complaining witness, although "argumentative, inconclusive, conflicting and appear[ing] in certain instances to be unbelievable[,]" does not, by itself, warrant reversal "because the jury is at liberty to believe what they choose and disbelieve what they choose," but reversing for a new trial because of additional errors); Hines v. State, 227 So.2d 334, 336 (Fla. 1st DCA 1969) ("Since the jury accepted the State's witness's version of the shooting, so must we, unless it was clearly not in accord with logic and reason."). The State met its threshold burden of producing evidence on every element of the crime charged, overcoming the motion for judgment of acquittal and permitting the questions of credibility to be resolved by the jury. It was, therefore, error to grant the motion for a judgment of acquittal.
We recognize that this case presents a unique situation in that the trial judge has since retired. However, the order containing his reasoning and comments on the credibility of the witnesses shows that he was ably executing his duties when faced with the defendant's motions. Florida Rule of Criminal Procedure 3.600(a)(2) authorizes a trial court to award a defendant a new trial when the verdict "is contrary to law or the weight of the evidence." "Rule 3.600(a)(2) thus enables the trial judge to weigh the evidence and determine the credibility of witnesses...." Ferebee, 967 So.2d at 1073 (quoting Tibbs, 397 So.2d at 1123 n. 9). Thus, under rule 3.600(a)(2) the test is the weight, as distinguished from the sufficiency, of the evidence. Weight "is a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other." Tibbs, 397 So.2d at 1123.
Here, the trial court's well-written order focused upon the weight of the State's witnesses with particular emphasis upon the credibility of William Marin, the jailhouse witness mentioned above.[1] The order observed that the State called William Marin and took the position in final argument that his testimony, in critical part, was probably false.
The trial court summarized the State's evidence:
But for the two statements of Maurice Jo[y]ner, a proven perjurer who did not testify, the statements of the two inmate witnesses, one of whom the state indicated in final argument was probably not believable, ... and the other whose testimony was equally consistent with the defendant being an accessory after the fact and not a principal and the false statement of the defendant that he was not present, the case is that of a victim and three possible shooters with insufficient evidence to establish which one in fact shot the victim....
The contents of the written order demonstrate the trial court's concern about the *905 weakness of the State's case and that it was weighing the evidence, measuring its credibility and probative force. The trial court was functioning as a "safety valve." See Moore v. State, 800 So.2d 747, 749 (Fla. 5th DCA 2001) (quoting State v. Hart, 632 So.2d 134, 135 (Fla. 4th DCA 1994), for the proposition that it is the trial court's function to act as a safety valve and grant a new trial where "the evidence is technically sufficient to prove the criminal charge but the weight of the evidence does not appear to support the jury verdict."). Thus, we find that the trial court properly concluded that the verdict rendered was against the weight of the evidence but erred in directing a verdict of acquittal. The proper remedy is to award a new trial.

The Confrontation Clause Issue
Although not necessary to our disposition, we note that the trial transcript reveals several harmful errors, some preserved and some not. In an abundance of caution, we elect to address one issue.
This issue concerns statements made to investigators by Maurice Joyner, who, by his own account, was one of the other two men in the vehicle with the victim and Mr. Shearod the night of the victim's death. During the murder investigation, the lead detective interviewed Mr. Joyner on two occasions. These accounts varied substantially, generally reflecting what the forensic evidence and disinterested witnesses were revealing as the investigation progressed. They were consistent only in that Mr. Joyner maintained that he was not the shooter and that Mr. Shearod was. At Mr. Shearod's trial, Mr. Joyner invoked his Fifth Amendment privilege not to testify because he himself was facing charges based on this incident. Nevertheless, Mr. Joyner's statements about Mr. Shearod's involvement in the shooting of the victim were related to the jury via the lead detective's testimony, without a hearsay objection by defense counsel,[2] despite the fact that the trial was taking place well after the release of the opinion in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (modifying the standard for determining whether the admission of a testimonial hearsay statement against a criminal defendant violates the right of confrontation). Mr. Joyner's two statements against Mr. Shearod are a clear violation of Mr. Shearod's confrontation rights guaranteed by our federal and state constitutions as outlined in Crawford.
The Confrontation Clause in the Sixth Amendment to the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This right of confrontation is also included in article I, section 16, of the Florida Constitution. When hearsay is presented against a criminal defendant, the defendant is generally denied his constitutional right to confront the witness who is testifying against him via the conduit of the witness on the stand, unless the evidence qualifies under an exception to the hearsay rule. "However, the mere fact that evidence meets the requirements of an exception to the hearsay rule does not necessarily mean it is admissible as evidence. The statement might be inadmissible for other reasons, including that the use of the statement would violate the defendant's constitutional right of confrontation." Blanton v. State, 978 So.2d 149, 153 (Fla.2008).
*906 The Supreme Court in Crawford, and later in Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), outlined the analytical steps to follow in evaluating whether the admission of a hearsay statement is barred by the constitutional guarantee. Generally, "the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial, (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant." Blanton, 978 So.2d at 154. If all three prongs of this analysis are met, admitting such hearsay violates the confrontational rights of the defendant. "The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. 1354 (adding that the Confrontation Clause "also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted," citing Tennessee v. Street, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)). Mr. Joyner's statements easily meet all three prongs under the Crawford analysis.
Mr. Joyner's hearsay statements were clearly out-of-court evidence regarding Mr. Shearod's involvement in the homicide. Both of Mr. Joyner's statements were made during police interrogation after completion of the crime and offered by the State as a substitute for Mr. Joyner's live testimony. As such, there is no question that these statements are testimonial in nature. Thus, the first prong of the Crawford analysis is satisfied.
Next, because Mr. Joyner exercised his constitutional privilege against self-incrimination, the second prong, that the declarant is unavailable, has been met. For this same reason, Mr. Shearod also lacked a prior opportunity to cross-examine Mr. Joyner and accordingly, the third prong is satisfied.[3] Thus, Mr. Joyner's statements were inadmissible hearsay.
In most instances, this would be the end of the analysis, but we sound one final note. To be hearsay, the statement must be offered for its truth. § 90.803(1)(c), Fla. Stat. (2004) ("`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). In its order granting the motion for judgment of acquittal, the trial court charitably suggested that defense counsel may have allowed the jury to hear Mr. Joyner's conflicting statements during the testimony of the detective at trial to show Mr. Joyner's lack of veracity, i.e., that his own statements were false and thus impeached themselves.[4] There is, unfortunately, *907 no indication in our record that defense counsel asked for or that the trial court gave a limiting instruction to the jury on the proper use of this evidence.[5]
Because this matter is being remanded for a new trial, both parties will have an opportunity to conform their presentations to the mandates of Crawford.
Reversed and remanded for a new trial.
ALTENBERND and STRINGER, JJ., Concur.
NOTES
[1] The trial court also noted in its order the testimony of a second jailhouse witness that the State presented. The defense presented its own jailhouse witnesses who claimed that they were present with Mr. Shearod at this time and never heard him say anything incriminating.
[2] After the detective testified to what Mr. Joyner had told him, the State moved to play the audio tape of the interviews to the jury, at which time defense counsel, who knew that Mr. Joyner would not be testifying, finally objected on the basis of Crawford. The trial court overruled that objection, finding that the door had already been opened.
[3] Even had Mr. Joyner waived his Fifth Amendment rights at a pretrial deposition, allowing his statements at trial would still have been a violation of Mr. Shearod's confrontation right. See Blanton, 978 So.2d at 155 (holding that "the exercise of the right to take a discovery deposition under rule 3.220 does not serve as the functional substitute for in-court confrontation of the witness."). We ask ourselves whether the holding in Blanton has reduced the three-prong Crawford analysis to two, in most cases (prior in-court testimony is a clear exception).
[4] The trial court further noted that this possible strategy may have worked in Mr. Shearod's favor. The trial court explained that the victim's girlfriend last saw the victim seated in the driver's seat of his car as he drove away after dropping her off at work, and Mr. Joyner was seated in the right rear passenger seat. The defense's blood spatter expert testified that based on his examination of the car, the shooter was most likely in the right rear passenger seat. The trial court opined that this may have contributed to the jury's failure to find that Mr. Shearod was the shooter by answering in the negative the specific jury question of whether Mr. Shearod possessed the firearm.
[5] This Crawford analysis is equally applicable to other hearsay evidence from a police officer who testified about a robbery some weeks before Mr. Avrampopulos's death, in which Mr. Avrampopulos had falsely implicated Mr. Shearod as his partner in the robbery. The State presented this evidence to suggest Mr. Shearod's motive for the murder, despite the fact that the State had dropped all charges against Mr. Shearod for this robbery well before the shooting. Should either the police officer's or Mr. Joyner's statement qualify as nonhearsay at trial on remand, the court must still balance the probative value of the statements against the prejudicial effect before admitting either as relevant evidence. See § 90.403.