**Ronald W. LINK, Petitioner,**

v.

**Kenneth S. TUCKER,[1] Respondent.**

**Case No. 3:10cv12/LAC/EMT.**

United States District Court,
N.D. Florida,
Pensacola Division.

May 3, 2012.

---

1. Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter McNeil, as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed.R.Civ.P. 25(d).

Ronald W. Link, Lowell, FL, pro se.

## ORDER

LACEY A. COLLIER, Senior District Judge.

This cause comes on for consideration upon the magistrate judge's Report and

Recommendation dated March 6, 2012 (doc. 22). The parties have been furnished a copy of the Report and Recommendation and have been afforded an opportunity to file objections pursuant to Title 28, United States Code, Section 636(b)(1). I have made a *de novo* determination of the objections filed.

Having considered the Report and Recommendation, and the timely filed objections thereto, I have determined that the Report and Recommendation should be adopted.

Accordingly, it is now **ORDERED** as follows:

1. The magistrate judge's Report and Recommendation is adopted and incorporated by reference in this order.

2. The petition for writ of habeas corpus (doc. 1) is **DENIED.**

3. A certificate of appealability is **DENIED.**

### ORDER and REPORT AND RECOMMENDATION

ELIZABETH M. TIMOTHY, United States Magistrate Judge.

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 and supporting memorandum (docs. 1, 2). Respondent filed an answer and relevant portions of the state court record (doc. 12). Petitioner filed a reply (doc. 17).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b). After

careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

### I. BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 12).[2] Petitioner was charged in the Circuit Court in and for Escambia County, Florida, with one count of DUI manslaughter (Count 1), one count of DUI with serious bodily injury (Count 2), and one count of leaving the scene of an accident with death (Count 3) (Ex. A at 3–4). Following a jury trial on April 20–21, 2006, he was found guilty as charged (Ex. A at 70, Exs. B, C, D, E, F). Petitioner was adjudicated guilty and sentenced to a term of 180 months of imprisonment on Count 1, with pre-sentence credit of 970 days, a consecutive term of 60 months of imprisonment on Count 2, and a term of 180 months of probation on Count 3, to run consecutively to the sentence on Count 2 (Ex. A at 72–124, 153–60).

Petitioner, through counsel, appealed the judgment and sentence to the Florida First District Court of Appeal ("First DCA"), Case No. 1D06–3218 (Ex. A at 164). Petitioner's counsel filed a brief, pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. G). Petitioner filed a pro se initial brief (Ex. I). The First DCA affirmed the

---

**2.** Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 12). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

judgment per curiam without written opinion on August 28, 2007 (Ex. J). *Link v. State*, 963 So.2d 704 (Fla. 1st DCA 2007) (Table). Petitioner did not seek further review.

On August 16, 2008, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. K at 1–15). On November 7, 2008, the state circuit court issued an order striking the motion, because it contained legally insufficient claims, without prejudice to Petitioner's filing an amended motion within thirty (30) days (*id.* at 16–17). Petitioner filed an amended motion (*id.* at 18–34). The state circuit court summarily denied the motion on March 30, 2009 (*id.* at 35–40). Petitioner appealed the decision to the First DCA, Case No. 1D09–2451 (Ex. M). The First DCA affirmed the decision per curiam without written opinion on October 13, 2009, with the mandate issuing December 7, 2009 (Exs. O, R). *Link v. State*, 22 So.3d 543 (Fla. 1st DCA 2009) (Table).

On June 16, 2009, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. S). On July 24, 2009, the state circuit court rendered an order dismissing the motion, because it failed to include an oath, with leave to re-file the motion with a proper oath (*id.*). On August 8, 2009, Petitioner filed a "Motion for Clarification" (*id.*). The state circuit court dismissed the motion on October 8, 2009 (*id.*).

Petitioner filed the instant federal habeas action on January 14, 2010 (doc. 1). Respondent concedes the habeas petition is timely (doc. 12 at 2–3).

## II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104–132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[3] The

---

**3.** Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S.Ct. 1495); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S.Ct. 1495). The opinion of Justice Stevens in Part

appropriate test was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13, 120 S.Ct. 1495 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S.Ct. 2113, 2119–20, 147 L.Ed.2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time

the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir.1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 831, 835 (11th Cir.2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because " 'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' " *Lockyer*, 538 U.S. at 73, 123 S.Ct. 1166 (quoting *Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06, 120 S.Ct. 1495). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

 If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The

II was joined by Justices Souter, Ginsburg, and Breyer.

standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. 1495. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson,* 542 U.S. 649, 652, 124 S.Ct. 2736, 2737–38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone,* 535 U.S. 685, 697 n. 4, 122 S.Ct. 1843, 1851 n. 4, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head,* 268 F.3d 1223, 1241 (11th Cir.2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gill v. Mecusker,* 633 F.3d 1272, 1287 (11th Cir.2011) (quoting *Williams,* 529 U.S. at 411, 120 S.Ct. 1495) (citing *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 786–87, 178 L.Ed.2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill, supra* at 1291 (citing *Harrington,* 131 S.Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See Harrington,* 131 S.Ct. at 786; *see also Gill, supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

 When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller–El,* 537 U.S. at 340, 123 S.Ct. 1029 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or

that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 496 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

▇ Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, 551 U.S. 930, 953, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones*, 496 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III. EXHAUSTION AND PROCEDURAL DEFAULT

▇ It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66, 115 S.Ct. 887; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277–78, 92 S.Ct. 509.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In *Picard v. Connor*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277, 92 S.Ct. 509. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, 92 S.Ct. 509, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

---

**4.** Section 2254 provides, in pertinent part:

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). In *Anderson*, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7, 103 S.Ct. 276 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant ... asserted a broad federal due process right to jury instructions that properly explain state law." *Anderson*, 459 U.S. at 7, 103 S.Ct. 276 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n. 3, 103 S.Ct. 276. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). The *Duncan* Court strictly construed the

exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 513 U.S. at 365–66, 115 S.Ct. 887. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004). In *Baldwin*, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32, 124 S.Ct. 1347. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir.2005):

If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaus-

---

**5.** The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state con- stitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366, 115 S.Ct. 887.

tion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair* [*v. Campbell*], 315 F.Supp.2d [1179], at 1184 [ (M.D.Ala. 2004) ] (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986)). This is consistent with settled law established by the Supreme Court.... We therefore hold that " '[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.' "

416 F.3d at 1302–03 (citations omitted).[6]

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement. After *Duncan*, however, the Eleventh Circuit has taken a more narrow approach. For example, in *Zeigler v. Crosby*, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial

....," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n. 5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), ... did not present to the Florida courts the federal claim asserted to us." *Id.*

 An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See O'Sullivan*, 526 U.S. at 839–40, 848, 119 S.Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 and n. 1, 111 S.Ct. 2546, 2555 and n. 1, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir.1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a

---

**6.** In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the

Alabama Constitution[,] and Alabama law." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir.2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

state court); *accord Tower v. Phillips,* 7 F.3d 206, 210 (11th Cir.1993); *Parker v. Dugger,* 876 F.2d 1470 (11th Cir.1990), *rev'd on other grounds,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey,* 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna,* 534 U.S. 362, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen,* 455 F.3d 1269, 1271 (11th Cir.2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley,* 250 F.3d 1308, 1313 (11th Cir.2001), or in a manifestly unfair manner. *Ford v. Georgia,* 498 U.S. 411, 424–25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary,* 70 F.3d 576, 579 (11th Cir.1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd v. Haley,* 250 F.3d 1308, 1313 (11th Cir.2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. *Tower,* 7 F.3d at 210; *Parker,* 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower,* 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup,* 513 U.S. at 327, 115 S.Ct. 851. Further:

a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable ev-

---

7. The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. *Marek v.* *Singletary,* 62 F.3d 1295, 1302 (11th Cir. 1995); *Alderman v. Zant,* 22 F.3d 1541 (11th Cir.1994).

1324

idence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

## IV. PETITIONER'S CLAIMS

A. *Ground One: "Whether the trial court abused its discretion and committed prejudicial reversible error by the admission of evidence of prior conduct by Petitioner irrelevant to any material issue at trial."*

Petitioner argues the trial court abused its discretion by allowing Deputy Shedrick Johnson to testify that Petitioner was "extremely intoxicated" three hours prior to his hitting two motorcyclists with his van, resulting in the death of one motorcyclist and serious bodily injury to the other (his leg was severed) (doc. 1 at 4; doc. 2 at 4–7). Petitioner argues his alleged intoxication three hours prior to the incident was irrelevant and, therefore, inadmissible under Florida Statutes § 90.404(2)(A) (*id.*). He further argues that even if the evidence was relevant, any probative value was outweighed by its prejudicial effect (*id.*). Petitioner contends the trial court's error deprived him of his Sixth Amendment right to a fair trial (*id.*). Petitioner states he raised this claim on direct appeal of his conviction (doc. 1 at 4).

Respondent contends Petitioner failed to exhaust this claim, because he failed to present the federal nature of his claim to the trial court or on direct appeal (doc. 12 at 3–5). Respondent argues Petitioner presented the state courts with a claim of state law error regarding the admissibility of Deputy Johnson's testimony, but Petitioner did not argue any federal basis for his claim (*id.*). Therefore, the claim is unexhausted and procedurally barred (*id.*). Respondent additionally contends, notwithstanding the procedural bar, the state court's rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 5–6).

In response to the exhaustion argument, Petitioner contends he presented the substance of his federal claim to the state courts (doc. 17 at 3–4, 8–9). He states he "federalized" this claim by presenting state precedent which applied federal law (*id.*). He further argues he was convicted of a crime he did not commit; therefore, this court should consider the merits of his claim (*id.* at 4).

■ The state court record shows that on direct appeal of his conviction, Petitioner's first claim of error asserted that the trial court's admitting Deputy Johnson's testimony violated Florida Statutes § 90.404(2)(A) and § 90.403 (Ex. I at 3–7). Petitioner did not cite in conjunction with the claim a federal source of law on which he relied, nor did he label the claim "federal" or otherwise indicate a federal law basis for his claim (*id.*). Additionally, he cited only Florida cases in support of his claim of trial court error with respect to the admission of Deputy Johnson's testimony (*id.*). Although some of those Florida cases cited federal cases, they did not decide the claim on federal grounds, rather, they based their decisions on Florida evidentiary rules and interpretations of those rules by the Florida courts. Therefore, Petitioner did not exhaust a federal claim regarding the trial court's admission of Johnson's testimony. Further, direct appeal was the procedurally proper vehicle for raising a claim of trial court error of this nature; therefore any attempt to return to state court to present his federal claim would be futile, because a second appeal is not available. Accordingly, Ground One is procedurally barred.

As previously noted, a procedural default may be excused through a showing of cause for the default and prejudice arising therefrom, *see Coleman*, 501 U.S. at 750, 111 S.Ct. 2546, or a demonstration that failure to consider the claim will result in a "fundamental miscarriage of justice," *see Murray*, 477 U.S. at 495–96, 106 S.Ct. 2639. In the instant case, Petitioner has not shown cause for his failure to exhaust the claim he asserts in Ground One. Furthermore, he has failed to show he is entitled to review through the "fundamental miscarriage of justice" gateway. As evidence of his alleged actual innocence, Petitioner submitted his own affidavit and an affidavit of Ronald Baker, a fellow inmate at Marion Correctional Institution, stating that Petitioner's speech and mannerisms, specifically, "slurred" speech and hand movements while he is speaking, resemble someone who is intoxicated, even though he is not (doc. 17 at 2, Exs. A, B).

To the extent Petitioner argues he would not have been convicted of DUI manslaughter but only a lesser included offense (for example, vehicular homicide), if the jury had heard evidence that his "normal" speech and mannerisms resemble those of an intoxicated person, the Eleventh Circuit recently held that such claims are not cognizable "actual innocence" claims. *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1015 (11th Cir.2012) ("[T]he narrow and extraordinary nature of *Schlup's* actual innocence "gateway" does not extend to petitioners . . . who did the killing and whose alleged "actual innocence" of a non-capital homicide conviction is premised on being guilty of only a lesser degree of homicide.").

Additionally, Petitioner's evidence is insufficient to show actual innocence.

Evidence of Petitioner's speech and mannerisms nearly seven (7) years after the offenses occurred has no probative value with regard to his condition on the night he killed and injured the motorcyclists.[8] Therefore, Petitioner failed to show that it is more likely than not that no reasonable juror would have convicted him in light of Inmate Baker's testimony. *See Schlup*, 513 U.S. at 327, 115 S.Ct. 851. For these reasons, Petitioner is not entitled to federal review of Ground One.

Moreover, even if this court accepted Petitioner's argument that he fairly presented a federal claim to the state courts, he failed to demonstrate he is entitled to federal habeas relief under the AEDPA. It is well established that a challenge to a state trial court's ruling on a question of state law, for example, an evidentiary ruling, is cognizable on federal habeas only to determine whether the alleged error was so critical or important to the outcome of the trial to render the trial fundamentally unfair. *Carrizales v. Wainwright*, 699 F.2d 1053, 1053–54 (11th Cir. 1983). Such review is available under the Due Process Clause. *See Hills v. Henderson*, 529 F.2d 397, 401 n. 6 (5th Cir.1976). "The established standard of fundamental fairness [when reviewing state evidentiary rulings] is that habeas relief will be granted only if the state trial error was 'material in the sense of a crucial, critical, highly significant factor.'" *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir.1983) (quoting *Hills*, 529 F.2d at 401).

In this context, the Eleventh Circuit has reviewed a claim similar to the claim presented here. *See Tejada v. Dugger*, 941 F.2d 1551, 1561 (11th Cir.1991). In *Tejada*, the petitioner claimed that the admission of prior bad act evidence, specifically,

---

**8.** The offenses occurred on July 8, 2003 (Ex. A at 3–4). Inmate Baker's affidavit is based upon his interaction with Petitioner at Marion Correctional Institution (doc. 17, Ex. B). The docket reflects Petitioner was not transferred to Marion C.I. until May of 2010 (doc. 11).

testimony that the petitioner had once put a pillowcase over his girlfriend's head, tied her up, and threatened to kill her, rendered his trial fundamentally unfair because it only served the purpose of convincing the jury that he had a propensity to commit violent crimes. *Id.* The Eleventh Circuit expressed no opinion on the propriety of the trial court's admission of the evidence, holding that regardless of that question, the admission of the evidence did not deprive the petitioner of a fundamentally fair trial. *Id.* The court based this conclusion upon the determination that the challenged evidence was not "material" to the conviction "in the sense of a crucial, critical, highly selective factor" because the State presented far more powerful evidence of his guilt through other testimony. *Id.* (citing *Shaw, supra*).

█ Since *Tejada*, the legal landscape has changed with the passage of the AEDPA. As previously discussed in the Standard of Review section of this Report, the AEDPA brought about a more deferential standard for habeas review of state court decisions under § 2254. In relevant part, section 2254(d) now provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002). Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's constitutional claim. *See Panetti,* 551 U.S. 930, 127 S.Ct. 2842; *Jones,* 496 F.3d 1216 (same).

In *Williams v. Taylor,* the Supreme Court addressed the "clearly established law" requirement of § 2254(d)(1) before turning to the "contrary to, or an unreasonable application of," requirement. 529 U.S. 362, 379, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The *Williams* Court highlighted the importance of the clause immediately following the "clearly established law" requirement, "limiting the area of relevant law to that 'determined by the Supreme Court of the United States.'" *Id.* at 381, 120 S.Ct. 1495 (quoting 28 U.S.C. § 2254(d)(1)). The Court then held that "[i]f this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Id.* In *Lockyer v. Andrade,* the Supreme Court subsequently held that the "clearly established law" requirement "refers to holdings, as opposed to dicta, of [the] ... Court's decisions as of the time of the relevant state-court decision." 538 U.S. at 71, 123 S.Ct. 1166 (quoting *Williams,* 529 U.S. at 412, 120 S.Ct. 1495).

The Eleventh Circuit has held that the "clearly established law" requirement of § 2254(d)(1) does not include the law of the lower federal courts. *See Dombrowski v. Mingo,* 543 F.3d 1270, 1274 (11th Cir. 2008) (citing *Putman v. Head,* 268 F.3d 1223, 1241 (11th Cir.2001)). Moreover, when no Supreme Court precedent is on point, the Eleventh Circuit has held that a state court's conclusion cannot be "contrary to clearly established Federal law as

determined by the U.S. Supreme Court." *Id.* (quoting *Washington v. Crosby,* 324 F.3d 1263, 1265 (11th Cir.2003)).[9]

In the instant case, evidence that Petitioner was extremely intoxicated three hours prior to the crash was probative of the issue of whether he was under the influence of alcoholic beverages to the extent that his normal faculties were impaired when the crash occurred, especially considering that Petitioner was not located until approximately thirty minutes after the crash and could have testified or presented evidence suggesting he became intoxicated after the crash. Additionally, any prejudicial effect of this evidence was minimized by the State's more powerful evidence of Petitioner's intoxication near the time of the crash, including (1) testimony from police officers and others who had contact with Petitioner thirty to ninety (30–90) minutes after the crash,[10] (2) testi-

---

**9.** In *Dombrowski,* the habeas petitioner claimed that the Florida state sentencing court violated his Fifth Amendment right against self-incrimination by failing to advise him of this right before soliciting his admission to prior convictions for sentencing enhancement purposes. *Id.* at 1273. Dombrowski argued that the Supreme Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was clearly established federal law guaranteeing his Fifth Amendment right not to testify at his sentencing hearing about his prior convictions. *Id.* at 1274. Although the district court agreed that *Miranda* afforded Dombrowski such a right, the Eleventh Circuit was not persuaded and concluded that there is no clearly established federal law requiring sentencing courts to either determine that a defendant knows and understands the consequences of his admission to prior convictions for sentence enhancement purposes or to advise a defendant of his Fifth Amendment rights before hearing such an admission. *Id.* at 1276. Thus, the court adhered to its previous decisions in *Washington v. Crosby* and *Isaacs v. Head,* in which the court held that "where no Supreme Court precedent is on point, we cannot say that the state court's conclusion ... is contrary to clearly established Federal law as determined by the U.S. Supreme Court." *Id.* (citing *Isaacs,* 300 F.3d 1232, 1252 (11th Cir.2002); *Washington,* 324 F.3d at 1265). In so deciding, the Eleventh Circuit stated that it was "mindful of the Supreme Court's reminder that 'rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule.'" *Dombrowski,* 543 F.3d at 1276 (citing *Williams,* 529 U.S. at 382, 120 S.Ct. 1495). However, the court was convinced that Dombrowski's Fifth Amendment argument did not rise to the level of a generalized standard, let alone a bright-line rule. *Id.* The court noted the wide disparity in opinion among its sister circuits on this issue and the lack of Supreme Court precedent directly on point. *Id.* The court also noted the Supreme Court's explanation in *Williams* that "[w]here the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent." *Id.* (quoting *Williams,* 529 U.S. at 382, 120 S.Ct. 1495) (internal quotation and citation omitted). The Eleventh Circuit was satisfied, however, that such a case was not before it. *Id.*

**10.** Lieutenant Scott McDonald testified that when he located Petitioner approximately thirty (30) minutes after the crash, Petitioner's appearance indicated he had been drinking (Ex. C at 100). Officer Peter Faulk testified he took custody of Petitioner from Lieutenant McDonald and observed that Petitioner smelled of alcohol and appeared to be under the influence of alcohol (*id.* at 108–09). Officer Raymond McPhail testified he made contact with Petitioner approximately thirty (30) minutes after the crash, and observed that Petitioner's eyes were bloodshot and watery, his face was flushed, his speech was mumbled, he smelled of alcohol, and he admitted having several drinks (*id.* at 112–13). Officer McPhail also testified he conducted standard field sobriety exercises on Petitioner, and his performance indicated he was impaired by alcohol (*id.* at 115–17). Melinda Ply testified that approximately ninety (90) minutes after the crash, she smelled a strong odor of alcohol on Petitioner, and he appeared to be under the influ-

mony that Petitioner's blood alcohol level two hours after the crash was .052, and (3) testimony estimating Petitioner's blood alcohol level at the time of the crash as .07–.10, with an average of .09, through a calculation called "back extrapolation" or "retrograde extrapolation" (Ex. C at 111–

14, 130–33, 135–39, 157–60, 180). Petitioner has pointed to no Supreme court precedent holding that the admission of prior bad act evidence in such circumstances violates the constitutional guarantee of due process and a fair trial, and the undersigned has found none.[11] He has thus

ence of alcohol (Ex. D at 180). Additional evidence of impairment was testimony suggesting Petitioner did not know how the accident happened. Petitioner told Melinda Ply he did not know whether he was driving when the crash occurred (*id.*). Petitioner told Lieutenant McDonald he was "scared" and asked if "those people" were all right (Ex. C at 99). He also told McDonald that one of the motorcyclists came into his lane, and then he (Petitioner) went into the other lane and hit "her" motorcycle (*id.* at 100, 104). Petitioner told Officer McPhail that a vehicle stopped in front of him, and he went around it, and then motorcycles came into his lane from the opposite direction (*id.* at 112–13).

**11.** In *Lisenba v. People of State of California,* the defendant challenged on due process grounds the state trial judge's admission of live snakes at trial on the ground that the sole purpose of the production of the snakes was to prejudice the jury against him, and those in the courtroom, including the jury, were in a panic as a result of the snakes being brought into the courtroom. 314 U.S. 219, 228, 62 S.Ct. 280, 86 L.Ed. 166 (1941). Noting that "[the Court] do[es] not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence," the Supreme Court held that the fact that evidence admitted as relevant by a trial court is shocking to the sensibilities of those in the courtroom cannot, for that reason alone, render its reception a violation of due process. 314 U.S. at 228–29, 62 S.Ct. 280.

In *Estelle v. McGuire,* the Supreme Court held that McGuire's due process rights were not violated during his prosecution for second degree murder of his infant daughter by the admission of evidence that the infant suffered from battered child syndrome because evidence of the victim's prior injuries was relevant to issue of intent. 502 U.S. 62, 70, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court expressly declined to address the issue of whether the admission of irrelevant evidence violates the due process guaranteed by

the Fourteenth Amendment. 502 U.S. at 70, 112 S.Ct. 475 (citing *Spencer v. Texas,* 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (rejecting argument that Due Process Clause requires exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose was served, and recognizing, "Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial.... But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal procedure.")).

In *Dowling v. United States,* the Supreme Court rejected a due process challenge to the admission of testimony regarding collateral crime evidence. 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). During Dowling's trial for bank robbery, the Government presented testimony of Vena Henry, who testified that a man wearing a knitted mask with cutout eyes and carrying a small handgun had, together with a man named Delroy Christian, entered her home approximately two weeks after a bank robbery in the town where she lived. 493 U.S. at 344, 110 S.Ct. 668. Ms. Henry testified that a struggle ensued, and she unmasked the intruder, whom she identified as Dowling. *Id.* at 344–45, 110 S.Ct. 668. Based on this incident, Dowling had been charged under Virgin Islands law with burglary, attempted robbery, assault, and weapons offenses, but had been acquitted after a trial held prior to the federal trial on federal bank robbery and armed robbery charges. *Id.* at 345, 110 S.Ct. 668. The Supreme Court held that where the collateral crime testimony was "at least circumstantially valuable in proving [Dowling's] guilt," the admission of this testimony did not violate the Due Process Clause. *Id.* at 353, 110 S.Ct. 668. In so holding, the Court rejected Dowling's argument that admission of evidence relating to acquitted conduct is inherently unreliable, as well as his argument that the use of this type of evidence creates a constitutionally unac-

failed to show that the First DCA's rejection of his due process claim was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Therefore, Petitioner is not entitled to federal habeas relief on Ground One. *See, e.g., Mejia v. Garcia,* 534 F.3d 1036, 1046 (9th Cir.2008) (denying federal habeas relief on petitioner's claim that admission of propensity evidence, that is, evidence of past uncharged sexual offenses, to lend credibility to victim's allegations of assault and kidnapping violated due process, on ground that petitioner pointed to no Supreme Court precedent establishing that admission of propensity evidence necessarily violates due process); *Bugh v. Mitchell,* 329 F.3d 496, 512–13 (6th Cir.2003) (state court's admission of "other acts" evidence was not contrary to clearly established Supreme Court precedent, inasmuch as "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence"); *see also Torres v. Runnels,* 137 Fed.Appx. 96 (9th Cir.2005) (unpublished) ("Because there is no United States Supreme Court precedent holding that admission of evidence of prior sexual misconduct to show propensity violates due process, the state court's determination in this case cannot be contrary to or an unreasonable application of clearly established federal law and Torres is not entitled to habeas relief."); *Aquino v. McNeil,* No. 4:06cv318/SPM/EMT, 2009 WL 2495762, at *1 (N.D.Fla. Aug. 10, 2009) (unpublished)

(habeas petitioner convicted of sexual battery upon a child was not entitled to relief on claim that trial court erred by admitting evidence that petitioner committed prior sexual acts on two other children as there is no decision of the Supreme Court suggesting that admission of prior-act evidence under such circumstances was unconstitutional); *Quintero v. McNeil,* No. 4:08cv318/RH/MD, 2009 WL 1833872, at *1 (N.D.Fla. June 23, 2009) (unpublished) (same); *Lamarca v. Secretary,* No. 8:06–cv–1158–T–17MSS, 2008 WL 3983124, at **28, 31 (M.D.Fla. Aug. 26, 2008) (unpublished) (federal habeas petitioner was not entitled to relief on claim that trial court violated due process in admitting collateral crime evidence where petitioner failed to cite any clearly established Supreme Court precedent which suggested, much less established, that state court's analysis contravened, or was unreasonable under, clearly established Supreme Court precedent), *certificate of appealability denied,* 568 F.3d 929 (11th Cir.2009); *see also, e.g., Lee v. Buss,* No. 3:09cv83/RV/EMT, 2011 WL 2784598, at *10–13 (N.D.Fla. June 28, 2011), *Report and Recommendation Adopted by* 2011 WL 2746320 (N.D.Fla. July 14, 2011) (unpublished) (federal habeas petitioner convicted of premeditated murder of ex-wife was not entitled to federal habeas relief on claim that trial court erred by admitting testimony of victim's boyfriend that petitioner twice threatened him with a gun months prior to the victim's murder, because the evidence was probative of motive, premeditation, and the lack of an accidental shooting; and there

ceptable risk that the jury will convict the defendant on the basis of inferences drawn from the acquitted conduct. *Id.*

Moreover, while the Supreme Court has addressed whether prior acts evidence is permissible under the Federal Rules of Evidence, *see Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), *Huddleston v. United States,* 485 U.S. 681, 108

S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Court has not explicitly addressed admission of such evidence in constitutional terms.

In none of the Supreme Court cases discussed *supra* did the Supreme Court hold that the admission of relevant evidence, including collateral crime evidence or evidence of prior bad acts, violates a defendant's due process rights under the Fourteenth Amendment.

was no decision of the Supreme Court suggesting that admission of prior act evidence under such circumstances was unconstitutional).[12] *But see Thornburg v. Mullin*, 422 F.3d 1113, 1124 (10th Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) as clearly established Supreme Court law applicable to claim that trial court's erroneous admission of evidence violated due process and describing *Estelle* standard as whether introduction of challenged evidence "so infused the trial with unfairness as to deny due process of law.").

B. *Ground Two: "Whether the trial court committed fundamental error by giving the DUI jury instruction containing the presumption of intoxication."*

Petitioner contends the trial court violated his Sixth Amendment right to a fair trial by including in the DUI jury instructions the presumption of impairment instruction set forth in Florida Statutes § 316.1934(2) (doc. 1 at 4–5; doc. 2 at 7–10). Petitioner contends including the instruction was improper, because law enforcement officers failed to follow required quality assurance procedures for collecting and maintaining the blood sample (*id.*). Petitioner asserts the blood sampling kit supplied by Officer McPhail to the paramedic who drew the sample was never shown to be "proper, legally acceptable scientific equipment for that purposes" (*id.*). Further, Officer McPhail conceded he did not refrigerate the blood sample and instead maintained it in his hot patrol car for "a couple of hours" (*id.*). Petitioner contends Florida law expressly provides that in the absence of evidence that the blood sample was collected and maintained in compliance with the mandates of

§ 316.1933, the State may not avail itself of the presumptions of § 316.1934(2) (*id.*). He contends the trial court's including the presumptions in the jury instructions improperly shifted the burden of proof to the defense (doc. 2 at 9 (citing *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986))). Petitioner states he raised this claim on direct appeal of his conviction (doc. 1 at 5).

Respondent contends Petitioner failed to fairly present a federal claim to the state courts (doc. 12 at 6–7). Therefore, the claim was not exhausted and is procedurally barred (*id.*). Respondent further argues, notwithstanding the procedural bar, Petitioner failed to show that the DUI jury instruction as a whole deprived him of a fair trial (*id.* at 7–10).

In response to the exhaustion argument, Petitioner contends he presented the substance of his federal claim to the state courts (doc. 17 at 3–4, 10–11). He states he "federalized" this claim by presenting state precedent which applied federal law (*id.*).

In Petitioner's brief on direct appeal of his conviction, he argued the trial court committed fundamental error by giving Florida's DUI jury instruction regarding the presumption of impairment (Ex. I at 7–10). He argued the trial court's giving the instruction in his case violated several decisions of the Florida courts, including *Cardenas v. State*, 867 So.2d 384 (Fla. 2004), *State v. Miles*, 775 So.2d 950 (Fla. 2000), *State v. Bender*, 382 So.2d 697 (Fla. 1980), and *Leveritt v. State*, 924 So.2d 42, 43 (Fla. 1st DCA 2006) (*id.*). He argued the instruction relieved the State of its "historical, constitutional obligation to present a prima facie case," which constituted fundamental error (*id.* at 10).

12. The undersigned recognizes that opinions of circuit courts of appeals other than the Eleventh Circuit and opinions of district courts are not binding on this court and cites them only as persuasive authority.

One of the Florida cases Petitioner cited, *Cardenas v. State,* determined whether trial court error in giving the instruction on the presumption of impairment was per se harmful error or subject to harmless error analysis. 867 So.2d at 393–96. In determining that such error was subject to harmless error analysis, the Florida Supreme Court explained that the lower court improperly relied upon the United States Supreme Court's "general verdict precedent," that is, *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) and *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), in deciding that such error was per se harmful. *Cardenas,* 867 So.2d at 394–95. The Florida Supreme Court went on to hold that *Yates* and *Griffin* did not apply to Florida's DUI statutory scheme. *Id.*

■ Additionally, in *State v. Bender,* the Florida Supreme Court cited three United States Supreme Court cases, but only for the proposition that (1) there is no federal constitutional impediment to a blood alcohol analysis with or without consent where probable cause has been established, and (2) there is a compelling state interest that justifies the suspension of a driver's license for failure to take a Breathalyzer or blood alcohol test. 382 So.2d at 698–99 (citing *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979)). However, the claim of error asserted by Petitioner on direct appeal did not involve the constitutionality of the blood alcohol analysis or suspension of his driver's license. Thus, although two of the Florida cases cited by Petitioner in his appellate brief discussed federal law, neither of them applied those precedents to the issue raised in Petitioner's appellate brief, that is, whether the trial court committed fundamental error by instructing the jury on the presumption of impairment. Therefore, Petitioner's citations to *Cardenas* and *Bender* were not sufficient to alert the First DCA that he was raising a claim of federal constitutional error with respect to the trial court's giving the presumption of impairment instruction. Further, in Petitioner's appellate brief, he never mentioned the federal standard applicable to a claim of constitutional error with respect to a jury instruction that creates a rebuttable presumption as to one of the elements of an offense; instead, he relied on state law for his argument that the instruction constituted fundamental error. Petitioner's having failed to fairly present a federal claim to the state court, the claim is unexhausted for federal habeas purposes. Additionally, direct appeal was the procedurally proper vehicle for raising a claim of trial court error of this nature; therefore any attempt to return to state court to present his federal claim would be futile, because a second appeal is not available. Accordingly, Ground Two is procedurally barred.

■ Moreover, Petitioner has not shown cause for his failure to exhaust the claim he asserts in Ground Two, nor has he shown he is entitled to review through the "fundamental miscarriage of justice" gateway, as discussed *supra.* Therefore, he is not entitled to federal review of Ground Two.

C. *Ground Three: "Whether the court abused its discretion and reversibly erred by denying the defense motion for jury visit to the scene of the accident."*

Petitioner contends the trial court abused its discretion by failing to allow the jury to visit the scene of the crash, but allowing testimony from Deputy Melinda Ply regarding her observations of the

scene one year after the crash occurred (doc. 1 at 5; doc. 2 at 10–12). Petitioner contends allowing the visit would have given the jurors a clear perspective of the scene of the crash (*id.*). He contends the trial court violated his constitutional right to present a defense and confront his accusers (*id.*). Petitioner includes an additional, unrelated argument that the trial court abused its discretion by allowing evidence discrediting his character but not allowing evidence that one of the victims had illegal pills in his pocket at the time of the crash, and the other victim was driving with a suspended license (doc. 1 at 5). Petitioner states he raised Ground Three on direct appeal.

Respondent contends Petitioner failed to fairly present a federal claim to the state courts (doc. 12 at 10–11). Therefore, the claim was not exhausted and is procedurally barred (*id.*).

In Petitioner's brief on direct appeal, he claimed the trial court abused its discretion and reversibly erred by denying the defense's motion to permit the jury to visit the scene of the crash (Ex. I at 10). The entirety of his argument was the following:

> The court's reasons for denying the defense's motion ignores that homicide investigator Melinda Ply visited the scene approximately one year after the accident. (T. II 190–95). As a result, the trial court's reliance on the passage of time to deny the defense's motion for the Jury's visit to scene is illogical, given the investigator's testimony of recreating the scene.

(Ex. I at 11).

■ Petitioner gave absolutely no indication to the state court that he was raising a federal claim. Indeed, he did not indicate any legal basis for his claim, let alone a federal basis. Therefore, he failed to satisfy the exhaustion requirement as to Ground Three. Petitioner has not shown he is entitled to federal review of Ground Three through any recognized exception to the procedural bar. Therefore, the claim is procedurally barred.

> D. *Ground Four: "Whether the trial court fundamentally erred by imposing a sentence exceeding the guidelines maximum based solely on the trial jury findings."*

Petitioner states his maximum sentence under the Florida sentencing guidelines was 256.3 months of imprisonment (doc. 1 at 5–6; doc. 2 at 13). He asserts the sentencing court exceeded the maximum by sentencing him to an aggregate term of twenty (20) years of imprisonment on Counts 1 and 2 (180 months on Count 1 and a consecutive term of 60 months on Count 2) plus a term of fifteen (15) years of probation on Count 3 (*id.*). Petitioner contends this sentence exceeded the maximum guidelines sentence, in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007) (*id.*). Petitioner states he raised this claim on direct appeal (doc. 1 at 6).

Respondent contends sentencing points on the criminal punishment code scoresheet are calculated only as a means of determining the lowest possible sentence, pursuant to Florida Statutes § 921.0024(2) (doc. 12 at 23). Further, Florida's criminal punishment code authorizes sentences up to the statutory maximum, regardless of the total of sentencing points on the scoresheet; and consecutive sentences are expressly authorized by §§ 921.0024(2) and 921.16, without more fact-finding (*id.*). Respondent states Petitioner was sentenced to the statutory maximum of 180 months of imprisonment on Count 1, a second degree felony, pursuant to

§ 316.193(3)(a)(b)(c)3.a. and § 775.082(3)(c) (*id.*). Additionally, he was sentenced to the statutory maximum of 60 months on Count 2, a third degree felony, pursuant to § 316.193(3)(a)(b)(c)2 and § 775.082(3)(d) (*id.*). Lastly, Petitioner received a 15-year probationary sentence on Count 3, a second degree felony at the time he committed the crime, pursuant to § 316.027(1)(b) and § 775.082(3)(c) (2003). Respondent contends none of these sentences exceeded the statutory maximum (*id.* at 12–13). Further, according to the Supreme Court in *Oregon v. Ice,* 555 U.S. 160, 129 S.Ct. 711, 717, 172 L.Ed.2d 517 (2009), *Apprendi* and its progeny does not extend to imposition of consecutive sentences (*id.*). Therefore, Petitioner failed to state a violation of federal law (*id.* at 13).

1. Clearly Established Federal Law

In *Apprendi v. New Jersey,* the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Blakely v. Washington,* the Court clarified that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *United States v. Booker,* the Supreme Court extended its holding in *Blakely* to the United States Sentencing Guidelines, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. 543 U.S. 220, 243–44, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Cunningham v. California,* the Supreme Court extended the reasoning of *Apprendi, Blakely,* and *Booker* to California's determinate sen-

tencing law (DSL). 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). Under California's sentencing plan, the crime in question carried a lower term of 6 years, a middle term of 12 years, and an upper term of 16 years. *Id.,* 549 U.S. at 275, 127 S.Ct. 856. The judge was required to impose the middle term unless he found one or more aggravating facts at the sentencing hearing. *Id.* As in *Booker,* such aggravating facts were found by the court based on the preponderance of the evidence, and not by a jury. *Id.* at 288, 127 S.Ct. 856. Cunningham received the higher sentence based on the judge's fact finding, and the Supreme Court reversed. *Id.* The Court reasoned that while Cunningham's sentence was below the statutory maximum, the DSL effectively made the middle term the mandatory term, much as was the case with the federal sentencing guideline scheme struck down in *Booker.* *Id.* The Court therefore held that the judge's fact finding deprived Cunningham of his Sixth and Fourteenth Amendment right to a jury trial. *Id.* at 293, 127 S.Ct. 856.

However, in *Oregon v. Ice,* the Supreme Court held that the Sixth Amendment, as construed in *Apprendi, Blakely,* and *Cunningham,* does not inhibit a State from choosing to assign to judges, rather than to juries, the finding of facts necessary to imposition of consecutive, rather than concurrent, sentences for multiple offenses. 555 U.S. 160, 164, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009).

2. Federal Review of State Court Decision

Petitioner raised this claim on direct appeal of his conviction (Ex. I at 11–12). The First DCA rejected it in a summary affirmance of his conviction and sentence (Ex. J).

 Respondent's explication of Florida's sentencing scheme is correct. The

sentencing points on a defendant's criminal punishment code scoresheet are calculated as the lowest permissible prison sentence in months (*see* Ex. A at 150–51). Fla. Stat. § 921.0024(2) (2003). According to Petitioner's scoresheet, the lowest permissible prison sentence he could receive was 192.225 months (*id.*). The maximum sentence he could receive on Count 1, a second degree felony, was a term of imprisonment not exceeding fifteen (15) years, pursuant to § 316.193(3)(a)(b)(c)3.a. and § 775.082(3)(c), which was the sentence Petitioner received on that Count. Count 3 was also a second degree felony; therefore, the statutory maximum was fifteen (15) years of imprisonment for that offense as well, pursuant to § 316.027(1)(b) and § 775.082(3)(c) (2003). Petitioner was sentenced to a 15–year term of probation on that Count; therefore, his sentence did not exceed the statutory maximum. As to Count 2, a third degree felony, the maximum sentence he could receive was a term of imprisonment not exceeding five (5) years, pursuant to § 316.193(3)(a)(b)(c)2 and § 775.082(3)(d), which was the sentence he received on that Count. Therefore, Petitioner's sentence did not exceed the statutory maximum.

Additionally, Florida statutes provide that a defendant convicted of two or more offenses charged in the same charging document, as in Petitioner's case, shall serve the sentences of imprisonment concurrently unless the court directs that two or more of the sentences be served consecutively. *See* Fla. Stat. § 921.16(1); *see also* Fla. Stat. § 921.0024(2) (sentencing court may impose sentences concurrently or consecutively). In light of the Supreme Court's holding in Ice, the sentencing judge's exercising his statutory discretion to impose consecutive terms in Petitioner's case did not violate *Apprendi* and its progeny. Therefore, Petitioner is not entitled to federal habeas relief on Ground Four.

E. *Ground Five: "Petitioner's double jeopardy protections under the Fifth and Sixth Amendments were violated where the court convicted and sentenced Petitioner for the crime(s) of DUI manslaughter and leaving the scene of an accident with death."*

Petitioner contends his convictions for DUI manslaughter and leaving the scene of an accident with death violated the constitutional prohibition against double jeopardy, because the crimes were committed in a single criminal episode, they involved the same victim, and leaving the scene was a lesser included offense of DUI manslaughter (doc. 1 at 6; doc. 2 at 13–15). Petitioner asserts he raised this claim in his Rule 3.850 motion (doc. 1 at 7).

Respondent contends Petitioner failed to show that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts (doc. 12 at 13–14). Therefore, he is not entitled to habeas relief on Ground Five.

1. Clearly Established Federal Law

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311 (1984). This guarantee is applicable to the states through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices*, 466 U.S. at 307–08, 104 S.Ct. 1805

(citation and footnote omitted). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); *Whalen v. United States,* 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980) ("The Double Jeopardy Clause at the very least precludes ... courts from imposing consecutive sentences unless authorized by [the legislature] to do so."); *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1980) (stating, "the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where [the legislature] intended ... to impose multiple punishments, imposition of such sentence does not violate the Constitution."); *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (noting "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.").

▮ "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature ... intended that each violation be a separate offense." *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985). Although the Double Jeopardy Clause does not flatly prohibit the legislature from punishing the same conduct under two different statutes, federal courts assume that the legislature ordinarily does not intend to do so " 'in the absence of a clear indication of contrary legislative intent.' " *Hunter,* 459 U.S. at 366, 103 S.Ct. 673 (quoting *Whalen,* 445

U.S. at 691–92, 100 S.Ct. 1432); *see also Garrett,* 471 U.S. at 779, 105 S.Ct. 2407 (holding that multiple punishments are permissible "when the legislative intent is clear from the face of the statute or the legislative history"); *Ohio v. Johnson,* 467 U.S. 493, 499 n. 8, 104 S.Ct. 2536, 2541 n. 8, 81 L.Ed.2d 425 (1984) ("[I]f it is *evident* that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." (emphasis added)). If no clear intention is evident, the provisions are analyzed under the "same elements" test announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993). Although the court will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of the state's own statutes. *Hunter,* 459 U.S. at 368, 103 S.Ct. 673.

The Eleventh Circuit summarized its interpretation of Supreme Court law regarding double jeopardy as follows:

> To summarize, our review of a potential double jeopardy violation arising from a single prosecution is a two-stage analysis. First, we ascertain whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct. If a clear indication of such intent exists, our inquiry is at an end and the double jeopardy bar does not apply. If there is no clear indication of legislative intent to impose cumulative punishments, we examine the relevant statutes under the same-elements test of *Blockburger.* Under that test, if each statutory offense requires proof of an

element not contained in the other, the offenses are not the "same" and double jeopardy is no bar to cumulative punishment.

*Williams v. Singletary,* 78 F.3d 1510, 1513 (11th Cir.1996).

### 2. Federal Review of State Court Decision

Petitioner raised this claim as Ground I in his amended Rule 3.850 motion (Ex. K at 29). The state circuit court denied the claim as meritless (*id.* at 37). In doing so, the court relied upon *Lawrence v. State,* 801 So.2d 293 (Fla. 2d DCA 2001) and *Kelly v. State,* 987 So.2d 1237 (Fla. 2d DCA 2008) (*id.*). Petitioner appealed the decision to the First DCA (Ex. M). The First DCA affirmed per curiam without written opinion (Ex. O).

▮ Initially, Petitioner has failed to satisfy the "contrary to" provision of § 2254(d)(1). The legal standard applied by the state circuit court, articulated in *Lawrence, supra,* is the *Blockburger* test. *See Lawrence,* 801 So.2d at 294–95 (defendant's separate convictions for DUI manslaughter and leaving the scene of an accident involving death, arising from accident where single victim was killed, did not constitute double jeopardy, where each offense required proof of elements that the other did not, the two offenses were not degrees of the same offense, and one offense was not a lesser-included offense of the other). Further, Petitioner has failed to demonstrate that the state courts confronted a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from Supreme Court precedent. *See Lockyer,* 538 U.S. at 73, 123 S.Ct. 1166. Therefore, he is entitled to federal habeas relief only if he shows that the state courts unreasonably applied Supreme Court precedent in denying his double jeopardy claim.

As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill,* 633 F.3d at 1287 (citing *Harrington,* 131 S.Ct. at 786). The federal court must determine what arguments or theories supported or *could have supported* the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See Harrington,* 131 S.Ct. at 786; *see also Gill,* 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

In the instant case, the relevant Florida statutes specifying the separate offenses of DUI manslaughter and leaving the scene of an accident with death are sections 316.193(3)(a)(b)(c)3. and 316.027(1)(b), respectively. At the time of Petitioner's offense conduct, section 316.193 provided, in relevant part:

(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if the person is driving or in actual physical control of a vehicle within this state and:

(a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired;

(b) The person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; or

(c) The person has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath.

. . . .

(3) Any person:

(a) Who is in violation of subsection (1);

(b) Who operates a vehicle; and

(c) Who, by reason of such operation, causes or contributes to causing:

. . . .

3. The death of any human being or unborn quick child commits DUI manslaughter,

. . . .

Fla. Stat. § 316.193(1)(3) (2003).

Section 316.027 provided, in relevant part:

(1) (b) The driver of any vehicle involved in a crash occurring on public or private property that results in the death of any person must immediately stop the vehicle at the scene of the crash, or as close thereto as possible, and must remain at the scene of the crash until he or she has fulfilled the requirements of s. 316.062. Any person who willfully violates this paragraph commits a felony of the second degree, . . . .

Fla. Stat. § 316.027(1)(b) (2003).[13]

Neither of those provisions indicate whether the Florida legislature authorized cumulative sentences where both statutes are offended in a single criminal episode. Therefore, rules of statutory construction must be applied to help determine legislative intent.

The Florida legislature set forth rules of construction in Florida Statutes section 775.021. That provision provides, in relevant part:

(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.

(2) The provisions of this chapter are applicable to offenses defined by other statutes, unless the code otherwise provides.

. . . .

(4) (a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or

---

13. Section 316.062 provides:

(1) The driver of any vehicle involved in a crash resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his or her name, address, and the registration number of the vehicle he or she is driving, and shall upon request and if available exhibit his or her license or permit to drive, to any person injured in such crash or to the driver or occupant of or person attending any vehicle or other property damaged in the crash and shall give such information and, upon request, exhibit such license or permit to any police officer at the scene of the crash or who is investigating the crash and shall render to any person injured in the crash reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary, or if such carrying is requested by the injured person.

(2) In the event none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (1), and no police officer is present, the driver of any vehicle involved in such crash, after fulfilling all other requirements of s. 316.027 and subsection (1), insofar as possible on his or her part to be performed, shall forthwith report the crash to the nearest office of a duly authorized police authority and submit thereto the information specified in subsection (1).

Fla. Stat. § 316.062(1), (2) (2003).

more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021 (2003). Based upon this language, it is clear that the Florida Legislature expressly intended to convict and sentence a defendant for each offense he commits during the course of a single criminal episode, with three exceptions to that rule. Fla. Stat. § 775.021(4)(b). The exceptions adopt the *Blockburger* test. *See State v. Weller*, 590 So.2d 923, 925 (1991).

Petitioner has failed to show that the offenses in the instant case satisfy the first exception. At the time of Petitioner's offense conduct, July 8, 2003 (*see* Ex. A at 3–4), the offense of driving under the influence manslaughter had the following three elements:

1. (Defendant) drove or was in actual physical control of a vehicle;

2. While driving or in actual physical control of the vehicle, defendant

a. was under the influence of alcoholic beverages to the extent that his normal faculties were impaired, or

b. had a blood or breath alcohol level of 0.08 or higher.

3. As a result, defendant caused or contributed to the cause of the death of the victim.

*See* The Florida Bar 2002 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instruction on Crimes, Chapter 7.8 Driving Under the Influence Manslaughter (2002).

The offense of leaving the scene of an accident involving death had the following four elements:

1. Defendant was the driver of a vehicle involved in an accident resulting in death of any person.

2. Defendant knew or should have known that he was involved in an accident.

3. Defendant knew or should have known of the death of the person.

4. a. (Defendant) willfully failed to stop at the scene of the accident or as close to the accident as possible and remain there until he had given "identifying information" to the injured person, driver, occupant, or person attending the vehicle and to any police officer investigating the accident; or

b. Defendant willfully failed to render "reasonable assistance" to the injured person if such treatment appeared to be necessary or was requested by the injured person.

*See* The Florida Bar 2002 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instruction on Crimes, Chapter 28.4 Leaving the Scene of Accident Involving Death or Injury (2002).

The crime of DUI manslaughter required proof that Petitioner caused or contributed to the cause of the victim's death,

which was not an element of leaving the scene. Further, the crime of leaving the scene required proof that Petitioner departed from the scene of the crash, which was not an element of DUI manslaughter. Therefore, the first *Blockburger* exception does not apply to Petitioner's convictions. *See Lawrence*, 801 So.2d at 295; *Kelly v. State*, 987 So.2d 1237, 1239 (Fla. 2d DCA 2008). Furthermore, the second *Blockburger* exception is not satisfied because neither of the crimes are a degree of the other. Moreover, according to the tables of lesser included offenses included with each individual jury instruction, the third exception is not satisfied because leaving the scene is not a lesser included offense of DUI manslaughter; and DUI manslaughter is not a lesser included offense of leaving the scene. Therefore, Petitioner failed to demonstrate that the state court's denial of his double jeopardy claim was an unreasonable application of clearly established federal law.

F. *Ground Six: "Defense counsel rendered ineffective assistance in violation of Petitioner's Sixth and Fourteenth Amendment rights when she failed to properly present a motion for judgment of acquittal."*

Petitioner contends counsel was ineffective for presenting a "boiler plate" motion for judgment of acquittal ("JOA"), arguing only that the State did not prove that the crimes occurred in Escambia County Florida (doc. 1 at 7; doc. 2 at 15–20). Petitioner contends counsel should have included a "faultless drunk driver" argument, that is, the driver of one of the other vehicles (Mr. Miller) caused the initial impact of the crash (*id.*). He asserts the evidence at trial was contradictory as to whether Petitioner or Mr. Miller caused the first impact, but both of the parties' accident reconstruction experts agreed that neither Petitioner nor Mr. Miller would have been in enough control of his vehicle to avoid the second impact, which led to the death of the third driver, Ms. Hamilton (doc. 2 at 15). Petitioner further states both experts agreed that after the initial impact, Petitioner reacted within the normal amount of time that anyone who was not under the influence of alcohol would have reacted (*id.*). Petitioner contends had counsel included these arguments in her motion for JOA, the trial court would have granted a judgment of acquittal (doc. 1 at 7; doc. 2 at 15–20). Petitioner states he raised this claim in his Rule 3.850 motion (doc. 1 at 7).

Respondent contends Petitioner failed to show that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts (doc. 12 at 14–17). Therefore, he is not entitled to habeas relief on Ground Six.

1. Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To obtain relief under *Strickland*, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88, 104 S.Ct. 2052. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697, 104 S.Ct. 2052.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir.2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir.2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing profes-

sional norms." *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. 2052. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial-for example, what witnesses he presented or did not present-were acts that some lawyer might do.'" *Jones*, 436 F.3d at 1293 (citing *Chandler*, 218 F.3d at 1314–15 n. 15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." *Jones*, 436 F.3d at 1293 (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir.1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is ...." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir.2005) (quoting *Chandler*, 218 F.3d at 1317). Indeed, " '[a]bsolute rules would interfere with counsel's independence— which is also constitutionally protected— and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir.2001)).

■ As to the prejudice prong of the *Strickland* standard, Petitioner's burden of demonstrating prejudice is high. *See Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir.2002). The Supreme Court has cautioned that " '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. *Strickland*, 466 U.S. at 693–94, 104 S.Ct. 2052. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694, 104 S.Ct. 2052. Indeed, it would be "contrary to" the law clearly established in *Strickland* for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. *Williams v. Taylor*, 529 U.S. at 405–06, 120 S.Ct. 1495.

■ The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. *Strickland*, 466 U.S. at 694–95, 104 S.Ct. 2052. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), *Strickland* prejudice is gauged against the outcome of the trial, not on appeal. *See Purvis v. Crosby*, 451 F.3d 734, 739 (11th Cir.2006) (citing *Strickland*, 466 U.S. at 694–95, 104 S.Ct. 2052).

■ Finally, when a district court considers a habeas petition, the state court's

findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052; *Collier v. Turpin,* 177 F.3d 1184, 1197 (11th Cir.1999).

### 2. Federal Review of State Court Decision

Petitioner raised this claim as Claim II in his amended Rule 3.850 motion (Ex. K at 30–31). The state circuit court identified the *Strickland* standard as the appropriate legal standard for reviewing Petitioner's claim (Ex. K at 36). The court denied the claim on the following grounds:

> Defendant argues that the "evidence admitted at trial by the State and the Defense was contradictory"—while the State's expert testified that Defendant caused the initial impact which led to the second impact and death of Jeanne Hamilton, the defense expert testified that Ronnie Miller (who was injured in the incident) crossed into Defendant's lane and caused the first impact. Defendant asserts that counsel "failed to cite any precedent case law to support the naked assertion that the State had not succeeded in establishing any evidence to show [Defendant's] action ... resulted in the victim's death." Defendant further argues that had "counsel raised a proper JOA ... there is a reasonable probability that the court would have granted the JOA," and that "without a doubt, the State's evidence did not establish that Defendant caused or contributed to the initial impact, which subsequently led to the second impact, causing the death of Jeanne Hamilton."

To present a facially sufficient post-conviction claim that counsel was ineffective for failing to raise and preserve a sufficiency of the evidence claim for appeal via a timely and contemporaneous motion for judgment of acquittal, a movant should state sufficient facts to show that he may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial. *White v. State,* 977 So.2d 680, 681 (Fla. 1st DCA 2008) (citations omitted) (quotations omitted).

However, "[b]ecause conflicts in the evidence and the credibility of the witnesses have to be resolved by the jury, the granting of a motion for judgment of acquittal cannot be based on evidentiary conflict or witness credibility. Any conflicts in the evidence are properly resolved by the jury. A motion for judgment of acquittal should not be granted unless the evidence is such that no view which the jury may lawfully take favorable to the state can be sustained under the law." *Sapp v. State,* 913 So.2d 1220, 1223 (Fla. 4th DCA 2005).

During the State's case, witness Melinda Ply testified that, based on her investigation, Defendant's van was in the "wrong lane heading south" at the time of impact. [FN 4] Mr. Miller, the injured victim, also testified that at the time of impact, the van was in his lane of travel. [FN 5] Therefore, at the time of the first motion for judgment of acquittal, any more detailed motion for judgment of acquittal made on the basis that the State had failed to show that Defendant caused the initial impact would have been properly denied.

As to the motion for judgment of acquittal made at the conclusion of all the evidence, Defendant has failed to demonstrate that counsel was deficient in failing to elaborate on the argument as presented by Defendant in the instant motion. While it is clear that the experts differed in their opinions as to who caused the initial impact (resulting in

the second impact that killed Ms. Hamilton), this conflict in the evidence, and the question of the credibility of the experts and their respective conclusions, is clearly a question properly resolved by the jury. [FN 6] Defendant has failed to demonstrate either deficient performance or prejudice, and he is not entitled to relief on this basis.

[FNS 4–6 are references to the trial transcript]

(Ex. K at 37–39).

■ "[A] state court's interpretation of state law ... binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983). Therefore, this court must defer to the state court's determination that a motion for judgment of acquittal may not be properly granted under Florida law, unless the evidence is such that no view which the jury may lawfully take favorable to the State may be sustained under the law. *See Sapp v. State*, 913 So.2d 1220, 1223 (Fla. 4th DCA 2005).

■ The trial transcript confirms the state court's factual findings as to the evidence admitted at trial (*see* Exs. C, D, E). As found by the state court, the State presented evidence in its case in chief that Petitioner caused the initial impact with Mr. Miller by crossing into Mr. Miller's lane (*see* Ex. C at 51, Ex. D at 197). There was no dispute that the second impact, between Petitioner's vehicle and Ms. Hamilton's motorcycle, caused Ms. Hamilton's death. Based upon this evidence, there is no reasonable probability the trial court would have properly granted a mo-

tion for JOA at the close of the State's case, even if defense counsel had argued there was no evidence that Petitioner caused Ms. Hamilton's death.

Further, as the state court found, the experts offered differing opinions as to who caused the initial impact, which resulted in the second impact that killed Ms. Hamilton (*see* Ex. D at 269–328, 341–57, Ex. E at 361–404, 408–73, 489–516). In light of the conflict in the evidence, and the Florida standard for granting a motion for JOA, there is no reasonable probability the trial court would have properly granted a motion for JOA at the close of the evidence, even if defense counsel had made the "faultless drunk driver" argument Petitioner contends she should have made.

Petitioner failed to establish that the state court's denial of this claim of ineffective assistance of counsel was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of *Strickland*. Therefore, he is not entitled to habeas relief on Ground Six.

G. *Ground Seven: "Defense counsel rendered ineffective assistance in violation of Petitioner's Sixth and Fourteenth Amendment rights where counsel failed to present a motion for new trial when the verdict was against the greater weight of the evidence."*

Petitioner claims defense counsel was ineffective for failing to make a motion for new trial on the ground that testimony from the State's accident reconstruction expert conflicted with the defense expert's testimony, and the defense "proved" that the State's expert failed to use proper testing methods for determining who actually caused the crash (doc. 1 at 7–8; doc. 2 at 20–25). Petitioner argues the jury had reasonable doubt that he caused the initial impact, as evidenced by the jury's question

during deliberations (*id.*). He contends if defense counsel had presented legal argument regarding causation in a motion for new trial, the trial court would have determined that the evidence did not support the jury's guilty verdict on the DUI manslaughter count (*id.*). He additionally argues the trial court would have granted a motion for new trial on the leaving the scene count, if defense counsel had made a motion for new trial (*id.*). Petitioner states he raised this claim in his Rule 3.850 motion (doc. 1 at 8).

Respondent contends Petitioner failed to show that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts (doc. 12 at 17–21). Therefore, he is not entitled to habeas relief on Ground Seven.

### 1. Clearly Established Federal Law

The *Strickland* standard, which governs claims of ineffective assistance of counsel, is set forth *supra.*

### 2. Federal Review of State Court Decision

Petitioner raised this claim as Claim III in his amended Rule 3.850 motion (Ex. K at 32–33). The state circuit court adjudicated the claim as follows:

> Florida Rule of Criminal Procedure 3.600(a) states, in pertinent part, that "the court shall grant a new trial if [it] is established [that] the verdict is contrary to law or the weight of the evidence." The weight of the evidence "is a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other." *State v. Shearod,* 992 So.2d 900, 904 (Fla. 2d DCA 2008) (citations omitted).
>
> Defendant has failed to demonstrate that counsel was deficient for failing to move for a new trial on this basis. Although the jury may have advanced a

question pertaining to the responsibility for the first impact, it does not necessarily mean that "a greater amount of credible evidence" supported a conclusion that Mr. Miller and not Defendant was the cause of the initial impact. [FN 7] Similarly, the circumstances surrounding the leaving the scene of the accident charge are susceptible to interpretation with regard to Defendant's intent, [FN 8] and Defendant did not testify at trial. Even if he had, the Court cannot conclude that a greater amount of credible evidence showed that Defendant did not willingly and unlawfully leave the scene. Defendant has failed to demonstrate that counsel was deficient for failing to file a motion for new trial, and has further failed to demonstrate that he was prejudiced, as the Court finds that such a motion would not have been granted. He is not entitled to relief on this basis.

> [FNS 7 and 8 are references to the trial transcript]

(Ex. K at 39–40).

The trial transcript shows that during deliberations, the jury submitted the following question, "If we believe that the evidence shows that Ronnie Miller could have reasonably caused the first impact and, therefore, either caused or contributed to the second impact, but we also believe that Link contributed to the initial impact by being impaired and unable to react, are we applying the law correctly by rendering a guilty verdict on both Counts 1 and 2?" (Ex. F at 612). After discussion and agreement between the court and counsel, the court delivered the following response,

> Members of the jury, I believe I'm compelled to answer your question in this fashion: For me to specifically answer your question would be-would constitute the Court invading the province

of the jury. In other words, this is a decision you must reach.

You have all of the law that applies to this case. You need to decide what the facts of this case may be and to apply the law to those facts. Therefore, I would encourage you, if you have any questions, to re-read the instructions and apply the facts to the law that you have been given. Beyond that, I cannot comment further, as that would be invading your responsibility.

(Ex. F at 615–16).

Defendant contends defense counsel should have moved for a new trial, arguing that the weight of the evidence, though technically sufficient, did not appear to support the jury's verdicts as to DUI manslaughter and leaving the scene (doc. 2 at 21–24; doc. 17 at 17–20 (citations omitted)). As to the DUI manslaughter charge, he asserts there was no direct evidence of intoxication (doc. 17 at 17, 20). He contends the State's accident reconstruction expert testified Petitioner veered into Mr. Miller's lane, causing the initial impact, which subsequently led to the second impact and death of Ms. Hamilton; whereas the defense's expert testified Mr. Miller crossed into Petitioner's lane, causing the first impact (doc. 2 at 21). Petitioner asserts the State's expert admitted he did not use certain testing methods to determine the cause of the accident (id.). He asserts the experts agreed that once the initial impact occurred, there was nothing either driver could have done to avoid the second impact, and Petitioner reacted within the "normal" reaction time of 1.5 second or less (id.). Petitioner argues the jury's question demonstrates there was reasonable doubt in the jury's mind as to who caused the initial impact, and if defense counsel had moved for a new trial arguing that the evidence failed to establish beyond a reasonable doubt that Petitioner's manner of operating his vehicle caused the victim's death, the trial judge would have agreed and granted a new trial (id. at 21–24).

Upon review of the evidence adduced at trial, it was reasonable for the state court to conclude that Petitioner failed to show that a motion for new trial would have been properly granted. On the issue of causation with regard to the crash, one of the victims, Ronnie Miller who lost his leg in the crash, testified Petitioner's vehicle had crossed from the southbound lane into his northbound lane when the initial impact occurred (Ex. C at 50–51). The accident reconstruction experts, Perry Ponder and Jack Sparks, gave conflicting conclusions regarding whether Petitioner or Mr. Miller caused the initial impact (Ex. D at 269–328, 341–516). Although the defense extensively questioned the State's expert (Mr. Ponder) regarding the underlying bases for his conclusions, the credibility of his conclusions was not impeached to the degree that would have led the trial judge to properly conclude that the greater amount of credible evidence showed Petitioner did not cause the crash.

As to the offense of leaving the scene, Petitioner argues the evidence showed he fell down a cliff after his vehicle came to a rest, and he landed on railroad tracks, with no way to climb back up the cliff, so he began walking toward visible lights in an attempt to obtain help (doc. 2 at 24; doc. 17 at 17–18). He states the evidence showed police found him a mile and a half from the crash scene (doc. 2 at 24).

Contrary to Petitioner's assertion, there was no evidence he "fell" down the cliff. There was evidence that his van came to a stop when it hit a post or electrical box on the side of the road, which prevented the van from going over a cliff (Ex. C at 105, Ex. D at 328, 341–42). There was also evidence that police officers located Petitioner near railroad tracks approximately

a mile and a half from the crash (Ex. C at 97–98). Officer Scott McDonald testified Petitioner was "rather scratched up" when he located him (*id.* at 98). Officer McDonald testified he specifically asked Petitioner if he fell down the hill, and Petitioner responded that his feet hurt, but did not indicate he fell down the hill (*id.* at 99). McDonald testified that he had observed people fall down the bluff/cliff area and receive cuts and scratches from the fall (*id.* at 105). He also testified it would not have been easy to climb from the railroad tracks back up the cliff to where Petitioner's van stopped (*id.* at 106–07). Officer McDonald also testified Petitioner told him he was "scared" and asked if "those people" were all right (*id.* at 99). Petitioner also told McDonald that one of the motorcyclists came into his lane, and then he (Petitioner) went into the other lane and hit "her" motorcycle (*id.* at 100, 104). McDonald also testified there were several houses at the level of the railroad tracks between the scene of the accident and where they located Petitioner (*id.* at 101).

In light of the above-described evidence and the absence of any evidence that Petitioner actually fell down the cliff after his vehicle came to a rest (Petitioner did not testify at trial), there is no reasonable probability the trial court would have properly concluded that the greater amount of credible evidence showed Petitioner did not willfully fail to stop at the scene of the crash or willfully fail to render reasonable assistance to the injured.

In light of the foregoing, Petitioner failed to show he was prejudiced by counsel's failure to make a motion for new trial. Therefore, he has not demonstrated that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of *Strickland.* Accordingly, he is not entitled to relief on Ground Seven.

## V. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

■ The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 483–84, 120 S.Ct. 1595, 1603–04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED:**

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter McNeil as Respondent.

And it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED.**

2. That a certificate of appealability be **DENIED.**